UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALENTIN CHRISTIAN,

                              Plaintiff,          08-CV-6557

              v.                                  **DECISION**
                                                  **and ORDER**
TOWN OF RIGA et al.,

                              Defendants.
_____

## INTRODUCTION

    Plaintiff Valentin Christian ("Christian" and/or "plaintiff"),

brings this action alleging various counts against numerous

defendants[1] including the tort of trespass, common law fraud, mail

fraud under 18 U.S.C. §1341, wire fraud under 18 U.S.C. §1343,

Official Misconduct claims under New York Penal Law §195,

Conspiracy claims under 18 U.S.C. §241, denial of right under color

---

[1]Defendants named in the Amended Complaint are as follows: Town of Riga; Timothy McElligott, in his individual capacity and official capacity as Building Inspector for the Town of Riga; Timothy Rowe, in his individual capacity and official capacity as Town Supervisor, and member of the Town Board, Town of Riga, in 2005; Peter Brundage, in his individual capacity and official capacity as a Town Board member, Town of Riga, in 2005; Pamela Moore, in her individual capacity and official capacity as a Town Board member in 2005, and as Town Supervisor 2006 to 2007, for the Town of Riga; Edgar Moore, in his individual capacity and official capacity as a member, co-chair and chairperson of the Wind Committee, Town of Riga; David Panik, in his individual capacity and official capacity as a member and chairperson of the Wind Committee, Town of Riga; Stephen Trenton, in his individual capacity and official capacity as Building Inspector for the Town of Riga; Matthew Chapman, in his individual capacity and alleged official capacity as Building Inspector for the Town of Riga; Town of Greece; George Becker, in his individual capacity and official capacity as chairperson of the Planning Board, Town of Riga; Town of Riga Zoning Board of Appeals ("ZBA"); Jane Kress, in her individual capacity and official capacity as a member and acting chairperson of the ZBA, Town of Riga; David Ward, in his individual capacity and official capacity as member and chairperson of the ZBA, Town of Riga; Fred O'Brien, in his individual capacity and official capacity as member of the ZBA, Town of Riga; Richard Aldrich, in his individual capacity and official capacity as a member of the ZBA, Town of Riga; Mary Maynard, in her individual capacity and official capacity as member of the ZBA, Town of Riga; Kenneth Kuter, in his individual capacity and official capacity as a member of the Town Board, as Deputy Supervisor and as Supervisor, Town of Riga; James Fodge, in his individual capacity and official capacity as member of the Town Board, Town of Riga; Robert Ottley, in his individual capacity and official capacity as member of the Town Board, Town of Riga; David Smith, in his individual capacity and official capacity as member of the Town Board, Town of Riga (collectively "defendants"). See Am. Comp., The Parties ¶¶ 3-24)

of law pursuant to 18 U.S.C. §242, denial of due process and equal protection rights under 42 U.S.C. §1983, false advertising in violation of New York State Penal Law §190.20 and RICO claims under 18 U.S.C. §§1961-1968. In twenty-four causes of action, plaintiff alleges that defendants engaged in various acts of illegal behavior. Defendants now move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim or alternatively for a more definite statement under Rule 12(e). Plaintiff moves to amend his Amended Complaint. For the reasons set forth below, defendants' motion to dismiss is granted and plaintiff's motion to amend is denied as moot. Accordingly, plaintiff's Amended Complaint is dismissed.

## BACKGROUND

Unless otherwise noted, the facts as set forth in this Decision and Order are drawn from plaintiff's Amended Complaint, as is appropriate on consideration of a Rule 12(b)(6) motion to dismiss, including documents incorporated by reference or upon which plaintiff relied in drafting the complaint, as well as from public documents. See Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993) (When determining sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to factual allegations in amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which

judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing); <u>Greene v. WCI Holdings Corp.</u>, 956 F.Supp. 509, 511 (S.D.N.Y.1997).

On or about December 7, 2005, plaintiff submitted an application for a permit to build a 149 foot tall tower on his property with a wind turbine and antenna attached to general electricity to his residence and radio waves to his ham radio located therein. <u>See</u> Am. Comp., Statement of Claim, ¶10. The proposed location for this tower was on farmland adjacent to plaintiff's residence. <u>See</u> <u>id.</u> Later that same day, plaintiff met with Building Inspector Timothy McElligott ("McElligott") who expressed several concerns regarding the application including the fact that windmills and wind turbines are controversial, the proposed site for the wind turbine tower was on a parcel separate from plaintiff's residential lot and that McElligot's reading of the Riga Town Zoning Code did not explicitly permit electricity generating wind turbines or windmills. <u>See</u> <u>id.</u>, ¶11. On December 9, 2005 plaintiff submitted a second application for a permit. <u>See</u> <u>id.</u>, ¶12. This application was different from the first in that it specified the tower's location to be on the residential parcel of land. <u>See</u> <u>id.</u>

Following discussions with plaintiff, McElligot determined that a special use permit was required and denied the application

for that reason in a letter dated December 19, 2005 and subsequently December 29, 2005. See id., ¶¶13-15. According to the Amended Complaint, McElligot determined that the wind turbine was a "utility" that required a special use permit. See id., ¶15. Plaintiff appealed McElligot's December 19, 2005 decision on February 17, 2006 to the Town of Riga Zoning Board of Appeals ("ZBA") of which he was a member, and requested an interpretation. See id., ¶18. In essence, plaintiff appealed McElligot's interpretation that the law required a special use permit before the issuance of a building permit. On March 2, 2006, the ZBA accepted plaintiff's appeal at its hearing and adjourned the application to May 4, 2006 with knowledge of an impending proposed Public Law moratorium on all wind turbine towers, which moratorium would be considered at the next Town Board meeting to be held on March 14, 2006. See id., ¶¶19-27.[2]

On March 10, 2006, plaintiff made four additional applications for similar towers which differed in size, cost, location and foundation. See id., ¶28. Building Inspector Stephen Trenton ("Trenton") indicated by phone to the plaintiff that he would not be responding to any permit requests until after the ZBA ruled on the matter. See id., ¶29. However, plaintiff's four new applications were denied by Trenton on March 17, 2006 for the same

---

[2]Plaintiff did not consent to the ZBA delay. See id., ¶27. At this point, the ZBA appeared to be unsure whether a public hearing was required for plaintiff's appeal.

reason as the original application. See id., ¶34. On March 14, 2006, prior to plaintiff's hearing date of May 4, 2006 (which was the adjourned date set by the ZBA), the Town Board passed a local law declaring a moratorium effective immediately on the filing or issuance of permits for turbine towers in the Town of Riga. See id., ¶32. On May 4, 2006 a public hearing was held before the ZBA wherein the ZBA reversed the Building Inspector's interpretation and declared that a special use permit was not required for the issuance of the plaintiff's requested building permit to construct a tower with a combined wind turbine and antenna. See id., ¶39-40.

According to the Amended Complaint, the Town Board of Riga at a meeting held on August 8, 2006 extended the moratorium for an additional 120 days effective August 22, 2006. See id., ¶¶49-50. Plaintiff did not file any further permits until December 21, 2006. See id., ¶ 53.[3] On that day plaintiff submitted a letter to Building Inspector Matthew Chapman ("Chapman") noting the expiration of the moratorium and requesting issuance of the building permit which plaintiff initially applied for in December 2005. See id., ¶53. On December 21, 2006, acting upon plaintiff's demand for a permit during the lapse of the moratorium, Chapman issued via fax and mail a denial of the permit until he received additional information including requirements for site plan distance, soil certifications,

---

[3]At that time the moratorium had lapsed but it was reinstated on December 28, 2006 for sixty days by the Town Board. See id., ¶56.

insurance coverage during construction and architectural approval, which had not been contained in the original application, nor previously requested by the prior Building Inspectors, and not stated as a basis for the prior denial. See id., ¶54.

Plaintiff alleges that on December 26, 2006, Chapman issued an additional letter citing applicable town code and/or state standards upon which the Building Inspector relied and stating that "the construction of the wind and antenna towers require that a building permit be obtained." See id., ¶55. As previously mentioned, on December 28, 2006, the Town Board reinstated the moratorium for an additional sixty days until February 28, 2007. On January 16, 2007, plaintiff sought relief as an aggrieved person from the moratorium by appealing to the Town Board pursuant to Article V, Section 401 and which plaintiff entitled "Appeal per Wind Moratoria Local Law of 2006." See id., ¶60.[4] Article V, Section IV states that the application process and time for hearing such appeal was to be "in conformance with the procedural requirements and standards of the Town Zoning Ordinance." See id., ¶56. However, no action was taken on plaintiff's application i.e. the Riga Town Board failed to respond to the appeal. See id., ¶61. On January 11, 2008, plaintiff submitted a letter to the Riga Town Board requesting a response regarding his appeal. See id., ¶62. Plaintiff

---

[4]Plaintiff's appeal letter sought a hearing to review the "three applications...[to the Building Inspectors, the first of which was made on December 7, 2005." See Affirmation of J. Michael Wood ("Wood Aff."), Ex. B. at 5.

received no response to his letter. See id., ¶63. Plaintiff submitted another letter on February 22, 2008 and again received no response. See id., ¶¶64-65. Accordingly, it was approximately one year (January 11, 2008 and February 22, 2008) after the February 28, 2007 moratorium date had expired that the plaintiff demanded that the Town Board of Riga act on his prior application.

## **DISCUSSION**

### I. **Motion To Dismiss Standard**

Defendants have moved to dismiss plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A complaint generally need only contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief" to satisfy federal notice pleading requirements. See Fed.R.Civ.P. 8(a); Gregory v. Daly, 243 F.3d 687, 692 (2d Cir.2001). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A court's belief or disbelief in a complaint's factual allegations or its belief that a "recovery is very remote and unlikely" does not factor into a decision under Rule 12(b)(6). See id. Furthermore, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citation omitted). Therefore, the Court must

read plaintiff's Amended Complaint liberally. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (as plaintiff is proceeding *pro se*, the Court must read his pleadings liberally to state the strongest claims they suggest).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)). In considering a Rule 12(b)(6) motion to dismiss, the Court "'must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir.2008) (quoting Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir.2007)). However, the court may disregard a plaintiff's "legal conclusions, deductions or opinions couched as factual allegations." See, e.g., In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir.2007) (citation omitted). The court is also not required to credit conclusory statements unsupported by factual allegations. See, e.g., Otor, S.A. v. Credit Lyonnais, S.A., 2006 WL 2613775, at *2 (S.D.N.Y.2006); see also Davey v. Jones, 2007 WL 1378428, at *2 (S.D.N.Y.2007) (citation omitted) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss.")

**II. Criminal Statutes Under 18 U.S.C. §§1341, 1343, 241 and 242**

Plaintiff's recitation of Sections 241, 242, 1341 and 1343 of the United States Criminal Code in Counts 3, 4, 6 [second count 6], 7 (to the extent alleging a violation of 18 U.S.C. §242), 15, 16, 21 and 23 of his Amended Complaint is unavailing. Each of the statutory provisions under Title 18 identified by plaintiff are criminal statutes. Generally, violations of the Criminal Code may not serve as the basis for a civil cause of action unless the statute includes an express or implied private right of action. See Cort v. Ash, 422 U.S. 66, 79 (1975); Hill v. Didio, 191 Fed.Appx. 13, 14 (2d Cir.2006) ("A private individual may bring suit under a federal [criminal] statute only when Congress specifically intended to create a private right of action"); see also Seabury v. City of New York, 2006 WL 1367396 (E.D.N.Y.2006) (holding that most sections of the Criminal Code may only be prosecuted by the government).

None of the provisions plaintiff cites includes an express private right of action, nor may such a right be implied from the language of the statutes. See e.g. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir.1994) (holding that 18 U.S.C. §§ 242 is a criminal statute and does not provide a private cause of action); Tsabbar v. Booth, 293 F.Supp.2d 328, 335 (S.D.N.Y.2003) (finding that the civil rights provisions of Title 18 of the U.S. Code do not allow private rights of action); Ammann v. Connecticut,

2005 WL 465401, at *5 (D.Conn.2005) (holding that no private cause of action exists under 18 U.S.C. §§241, 242). Insofar as the Amended Complaint attempts to assert a criminal cause of action premised on one of the sections of Title 18 of the United States Code mentioned above, it must be dismissed since those sections are federal criminal statutes and do not create a private right of action for any of the varied forms of relief plaintiff seeks. Accordingly, the Court dismisses plaintiff's claims under 18 U.S.C. §§ 241, 242, 1341 and 1343. Because plaintiff lacks standing to maintain a cause of action under any of these statutes, Counts 3, 4, 6 [second count 6], 7 (to the extent alleging a violation of 18 U.S.C. §242), 15, 16, 21 and 23 are dismissed with prejudice.

### III. <u>New York State Penal Law Claims</u>

Insofar as the Amended Complaint attempts to assert violations of the New York State Penal Law premised on Penal Law §195 (Counts 5, 6 and 19), Penal law §190 (Counts 10, 12 and 14), Penal Law §190.25 (Count 14) and Penal Law §190.20 (Count 20), those claims must be dismissed. Those sections of the Penal Law do not create a private right of action for any of the varied forms of relief plaintiff seeks. See <u>Tourge v. City of Albany</u>, 285 A.D.2d 785, 787 (3d Dept.2001) (setting forth test for determining if private right of action exists and holding that there is no private right of action under §195.00 of the Penal Law);[5] see also <u>Scott v. AOL Time</u>

---

[5]The <u>Tourge</u> court ruled that "[t]o determine whether a private right of action may be implied from a statute, a three-part test must be satisfied. To be entitled to sue for a statutory violation, the plaintiff must

Warner, 109 Fed. Appx. 480, 481 (2d Cir.2004); Moore v. New York City Dep't of Educ., 2004 WL 691523, at *5 (S.D.N.Y. 2004) ("plaintiff has set forth no authority to support his claim that a private right of action to enforce rights allegedly created by these provisions exists"); Ware v. City Univ. of N.Y., 2002 WL 1343752, at *3 (S.D.N.Y.2002) (no private right of action created by criminal statute).

Here, plaintiff's claims must be dismissed because plaintiff has set forth no authority to support his claim that a private right of action to enforce rights allegedly created by these provisions exists. See Casey Systems, Inc. v. Firecom, Inc., 1995 WL 704964 (S.D.N.Y.) (stating the general rule that "when a statute is contained solely within the Penal Law Section, the legislature intended it as a police regulation to be enforced only by a court of criminal jurisdiction"). Accordingly, defendants' motion to dismiss plaintiff's claims is granted to the extent they are premised on the state Penal Law, as a criminal charge cannot be prosecuted by a private person. Therefore, plaintiff's New York State Penal law claims including Penal Law §195 (Counts 5, 6 and 19), Penal law §190 (Counts 10, 12 and 14 [second count 14]), Penal Law §190.25 (Count 14 [second count 14]) and Penal Law §190.20 (Count 20) are dismissed with prejudice.

---

demonstrate: (1) that he or she is a member of the class for whose benefit the statute was enacted, (2) that the recognition of a private right of action would promote the legislative purpose, and (3) that the creation of such right would be consistent with the legislative scheme * * *" See id.

## IV.  Plaintiff's State Tort Law Claims

New York General Municipal Law §50-e requires that a plaintiff must file a notice of claim prior to the commencement of an action against a municipality, and must serve the notice of claim within ninety (90) days after the claim arises. See N.Y. Gen. Mun. Law §50-e. Under New York law, a notice of claim is a condition precedent to bringing certain tort actions against municipalities such as the Town of Riga for damages sustained by reason of the negligence or wrongful act of the municipality or its officers, agents or employees whose conduct caused the alleged injury. See N.Y. Gen. Mun. Law §50-i;[6] Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir.1999). "[T]he general rule [is] that in a federal court, state notice-of-claim statutes apply to state-law claims." Id. (citing Felder v. Casey, 487 U.S. 131, 151 (1988)). Moreover, the law is clear that "[t]he notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." See Warner v. Village of Goshen Police Dept., 256 F.Supp.2d 171, 175 (S.D.N.Y.2003). Accord

---

[6] §50-i provides in pertinent part that:

1. No action or special proceeding shall be prosecuted or maintained against a...town . . . for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such...town,...unless, (a) a notice of claim shall have been made and served upon the...town,... in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based....

See N.Y. Gen. Mun. Law § 50-i.

<u>Jones v. Nassau County Sheriff Dept.</u>, 285 F.Supp.2d 322, 327 (E.D.N.Y.2003). The burden is on the plaintiff to plead and prove compliance with the requirements of §50-i. <u>See</u> <u>Panzeca Inc. v. Bd. of Ed. Union Free Sch. Dist. No. 6</u>, 29 N.Y.2d 508 (1971); <u>Stoetzel v. Wappingers Cent. Sch. Dist.</u>, 166 A.D.2d 643, 644 (2d Dept.1990).

Here, plaintiff's Amended Complaint alleges trespass (Counts 1, 13 and 18); common law fraud (Counts 2 and 14 [second count 14]); official misconduct (Counts 5, 6, 10, 12, 14 [second count 14] and 19); false advertising (Count 20); and criminal impersonation of a public official (Count 14 [second count 14]). However, plaintiff has not pled compliance with the notice of claim requirement i.e. that he has served a notice of claim as required by §50-i of the General Municipal Law. Nor does he allege that the notice of claim requirement was met and the omission was one of failing to plead compliance. Having failed to plead or prove compliance with the notice of claim provision, plaintiff's state tort law claims must be dismissed. <u>See</u> <u>Davidson v. Bronx Mun. Hosp.</u>, 64 N.Y.2d 59, 61-62 (1984) ("Failure to comply with provisions requiring notice and presentment of claims prior to commencement of litigation ordinarily requires dismissal"); <u>Donnelly v. McLellan</u>, 889 F.Supp. 136, 139 (D.Vt.1995); <u>see</u> <u>also</u> <u>Perez v. County of Nassau</u>, 294 F.Supp.2d 386, 391 (E.D.N.Y.2003). Thus, defendants' motion to dismiss the state tort law claims is

granted and Counts 1, 13, 18, 2, 14 [second count 14], 5, 6, 10, 12, 19 and 20 are dismissed.[7]

## V.    State Law Trespass and Fraud Claims

### A.    Trespass Claims

Defendants argue that plaintiff does not state a cause of action for trespass in Counts 1, 13 and 18 of the Amended Complaint because plaintiff does not explicitly allege that defendants were on his property without permission. Counts 1 and 13 allege trespass based on defendants' failure to issue building permits to plaintiff and count 18 alleges defendants' failure to hear plaintiff's appeal under a moratorium. See Am. Comp., Counts 1, 13 and 18. However, a cause of action for trespass requires an intrusion upon the property of another without permission. See Curwin v. Verizon Communications (LEC), 35 A.D.3d 645 (2d Dept. 2006) ("Entering upon the land of another without permission, even if innocently or by mistake, constitutes trespass"); Burger v. Singh, 28 A.D.3d 695, 698 (2d Dept. 2006); see also 55 Motor Ave. Co. v. Liberty Indus. Finishing Corp., 885 F.Supp. 410 (E.D.N.Y. 1994) ("An actionable trespass must involve a wrongful or unjustifiable entry upon the land of another") (citing Malerba v. Warren, 438 N.Y.S.2d 936, 940

---

[7]While plaintiff's Penal Law claims (Counts 5, 6, 19, 10, 12, 14 [second count 14 to the extent alleging violations of N.Y. Penal Law 190.25 and 190.00] and 20) are dismissed with prejudice (see Point III) and plaintiff's trespass claims in Counts 1, 13 and 18 are dismissed with prejudice (see Point V.A.), the remaining claims alleging state tort law claims (Counts 2 and 14 [second count 14 to the extent alleging fraud], are dismissed without prejudice. Plaintiff has failed to plead compliance with the notice of claim provision of General Municipal law §50-i and thus his state tort law claims have been dismissed. However, if plaintiff did comply with the notice requirements but failed to plead such compliance in his Amended Complaint, plaintiff is not precluded from filing an amended complaint setting forth that he complied with §§50-i and 50-e.

(Sup.Ct.1981)). "While physical entry by the trespasser upon another's land is not necessary, the trespasser must have at least caused or directed another person to trespass." See Golonka v. Plaza at Latham LLC, 270 A.D.2d 667, 669 (3d Dept 2000).

In determining the sufficiency of pleadings, whatever can be implied by fair and reasonable interpretation from the facts alleged must be deemed to have been stated. See Vitale v. Fowler Oil Co., Inc., 238 A.D.2d 794, 795 (3d Dept. 1997). Plaintiffs allege a failure to issue him a building permit and hear an appeal from that denial. Accepting plaintiff's allegations as true, and affording the him the benefit of every favorable inference (see Schneider v. Hand, 296 A.D.2d 454 (2d Dept. 2002)), plaintiff's allegations do not amount to an entry onto his land for purposes of stating a cause of action for trespass. See Curwin, 35 A.D.3d at 645; Kaplan v. Inc. Vill. of Lynbrook, 12 A.D.3d 410, 412 (2d Dept. 2004). Accordingly, taking the allegations in the Amended Complaint as true and viewing them as a whole, plaintiff has not adequately plead a cause of action for trespass. Thus, defendants' motion to dismiss the trespass claims is granted and Counts 1, 13 and 18 are dismissed with prejudice.

### B. Fraud Claims

Under New York law, a plaintiff asserting a claim for fraud must establish: (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and

(5) injury to plaintiff. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir.1997); Sauer v. Xerox Corp., 17 F.Supp.2d 193, 201 (W.D.N.Y. 1998). However, plaintiff has failed to allege any misrepresentation of a material fact in his causes of action for fraud. Plaintiff alleges only that he was provided with incorrect legal conclusions in denying his applications for building permits. See Am. Comp., ¶¶82-87. In addition, plaintiff has failed to allege that he relied on any misrepresentations made by defendants. Accordingly, in support of his contention that defendants committed fraud, plaintiff offers nothing more than unsupported bald assertions. Because plaintiff fails to state a claim for which relief may be granted on his fraud claims, Counts 2 and 14 [second count 14 to the extent alleging fraud] are dismissed.

## VI. **Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Here, plaintiff alleges claims pursuant 42 U.S.C. §1983 for denial of equal protection in Counts 7 and 23 [second count 23 to the extent alleging violations of Equal Protection] in his Amended Complaint. Based on the allegations of the Amended Complaint, plaintiff's Equal Protection claims fall under the theory of "selective treatment." LeClair v. Saunders, 627 F.2d 606, 609 (2d Cir. 1980). To succeed in an equal protection action based

upon a selective prosecution, a plaintiff in this circuit must show both "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.2001) (internal quotation marks omitted); see also LeClair, 627 F.2d at 609-10. It is well settled that plaintiffs must meet a two-pronged test in order to successfully demonstrate selective treatment or enforcement under the Fourteenth Amendment. See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir.2007).

**Similarly Situated**

        First, plaintiff must demonstrate that he "was treated differently from other similarly situated [individuals]." See Cine SK8, 507 F.3d at 790 (citations and quotation marks omitted); see also Church of the American Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 210 (2d Cir.2004) ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated"). In particular, at the motion to dismiss stage bald allegations that defendants preferred one party over another are inadequate to state a claim for equal protection. See Gagliardi v. Vill. of Pawling, 18 F.3d 188, 193 (2d Cir.1994). Instead, plaintiff must allege that another person is similarly situated in all relevant respects

except "for that which furnishes the basis of the claimed discrimination." See 303 West 42nd St. Corp. v. Klein, 46 N.Y.2d 686, 695 (1979). Further, the Second Circuit has held that, to the extent a municipality is selectively enforcing land use restrictions, a plaintiff would be "hard pressed" to demonstrate selective treatment without also demonstrating the municipality's knowledge of the other, unenforced violations. See LaTrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, 69 (2d Cir.1999).

Based on the allegations in the Amended Complaint, plaintiff has failed to allege that he was treated differently when compared to another person who was similarly situated to him for the purposes of his selective treatment equal protection claim. As Courts in this Circuit have held "demonstrating that a plaintiff has been treated differently from similarly situated individuals is 'the *sine qua non* of a LeClair selective enforcement violation.'" See Goldfarb v. Town of West Hartford, 474 F.Supp.2d 356, 368 (quoting John Doe No. 1 v. Vill. of Mamaroneck, 462 F.Supp.2d 520, 555 (S.D.N.Y.2006)). The only reference in the Amended Complaint to how another person was treated is the claim that "[o]n or about 10 September 2008, the Town Board granted another resident relief, which for plaintiff would be unobtainable." See Am. Comp., ¶223. "[T]he level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." See Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). "[T]he standard for determining whether another person's circumstances are similar to

the plaintiff's must be...whether they are prima facie identical."
See id. at 105 (internal quotation marks omitted); see also
Goldfarb, 474 F.Supp.2d at 366-67. The Plaintiff has not met this
standard. To support his claim, the plaintiff was required to
demonstrate that he was treated differently from others who were
similarly situated to him in all material respects. Here, plaintiff
offers no comparison to any similarly situated individuals who have
been treated differently from him. Accordingly, plaintiff's LeClair
selective treatment claim fails.

**Impermissible Considerations**

With respect to the second prong, the Second Circuit has held
that a plaintiff must demonstrate that the "differential treatment
was based on impermissible considerations such as race, religion,
intent to inhibit or punish the exercise of constitutional rights,
or malicious or bad faith intent to injure a person." See Cine SK8,
507 F.3d at 790 (citations and quotation marks omitted); see also
Freedom Holdings Inc. v. Int'l Tobacco Partners, Ltd., 357 F.3d
205, 234 (2d Cir.2004) ("To establish a violation of the Equal
Protection Clause based on selective enforcement, a plaintiff must
ordinarily show the following: '(1) [that] the person, compared
with others similarly situated, was selectively treated; and (2)
that such selective treatment was based on impermissible
considerations such as race, religion, intent to inhibit or punish
the exercise of constitutional rights, or malicious or bad faith
intent to injure a person.'") (quoting Lisa's Party City, Inc. v..

<u>Town of Henrietta</u>, 185 F.3d 12, 16 (2d Cir.1999)). In particular, the Second Circuit has explained that, in analyzing the second prong of selective enforcement claims, courts must distinguish between a "motivation to punish [in order] to secure compliance with agency objectives," and "spite, or malice, or a desire to" 'get' [someone] for reasons wholly unrelated to any legitimate state objective." <u>See</u> <u>Bizzarro v. Miranda</u>, 394 F.3d 82, 82 (2d Cir.2005) (quotations omitted).

Here, plaintiff does not allege that he was treated differently based on race, gender, religion or national origin. In addition, neither has plaintiff alleged that he was treated differently as a punishment for exercising his constitutional rights. Further, plaintiff does not claim that he was treated differently due to defendants' malicious or bad faith intent to injure him. The Second Circuit has warned that "cases predicating constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply." <u>See</u> <u>Bizzarro</u>, 394 F.3d at 86 (internal quotation marks omitted). Indeed, the Second Circuit has "frequently referred to the <u>LeClair</u> formulation in [this] circuit, ...but rarely [has] found a constitutional violation." <u>See</u> <u>id.</u> Thus, defendants' motions to dismiss plaintiff's equal protection claims and Counts 7 and 23

[second count 23 to the extent alleging violations of Equal Protection] are dismissed.

## VII. **<u>Plaintiff's Due Process Claims</u>**

Plaintiff alleges in Counts 7, 8, 9, 11, 14, 14 [second count 14 to the extent alleging Due Process], 17 and 22 that his rights to due process were violated as a result of the defendants' refusal to provide plaintiff with a building permit. As a result, it appears that plaintiff's asserted violations of due process are based on an alleged entitlement to a building permit. It has long been held that an unauthorized intentional deprivation of property by a state actor does not constitute a violation of due process if a meaningful post-deprivation remedy for the loss is available. <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981); <u>Ridgeview Partners, LLC, v. Entwistle</u>, 354 F.Supp.2d 395 (S.D.N.Y. 2005). New York State law provides mechanisms for relief from a denial of or delay in issuing a building permit. <u>See</u> Civil Practice Law and Rules Article 78; <u>see also</u> Town Law §267-b.

In the instant case, plaintiff alleged in his Amended Complaint that he did bring a prior proceeding pursuant to Article 78 of the CPLR on May 16, 2008 in State Court in Monroe County. <u>See</u> Am. Comp., Previous Lawsuits ¶8.[8] The availability of such an

---

[8]Plaintiff's Article 78 Proceeding was dismissed because the state court found that it was untimely. However, the appropriate action to take when appealing an alleged arbitrary and capricious action by an administrative body e.g. denying plaintiff's building permit, is through an Article 78 Proceeding.

Article 78 proceeding does away with any alleged procedural due process claim. <u>See</u> <u>Oblin Homes, Inc. v. Vill. of Dobbs Ferry</u>, 935 F.Supp. 497, 499-500 (S.D.N.Y.1996); <u>Orange Lake Assoc., Inc. v. Kirkpatrick</u>, 21 F.3d 1214, 1224 (2d Cir.1994). Accordingly, plaintiff availed himself of one of the remedies afforded to him under New York State law for the alleged deprivation of his rights. I therefore find that plaintiff has failed to state a cause of action for a violation of his rights to procedural due process.

With respect to a substantive due process argument, as I stated in the case of <u>Lisa's Party City</u>:

> To state a claim for a violation of substantive due process in the context of permits issued pursuant to zoning laws, a plaintiff must "(1) establish a valid property interest in a benefit entitled to constitutional protection, and (2) show that arbitrary and irrational zoning actions deprived plaintiffs of that benefit." <u>The Tara Circle, Inc. v. Bifano</u>, <u>supra</u>, at *9, <u>citing</u> <u>Zahra v. Town of Southold</u>, <u>supra</u>; <u>Arlington Heights v. Metropolitan Housing Dev. Corp.</u>, 429 U.S. 252 (1977); <u>Brady v. Town of Colchester</u>, 863 F.2d 205 (2d Cir. 1988). A zoning board's actions can be characterized as arbitrary or irrational "only when the government acts with 'no legitimate reason for its decision.'" <u>Crowley v. Courville</u>, 76 F.3d 47, 52 (2d Cir. 1996)(internal citations omitted).

<u>Lisa's Party City</u>, 2 F.Supp.2d at 383. The plaintiff is unable to clear either of these two hurdles. However, before engaging in this due process analysis the Court must determine whether plaintiff's claim is ripe. A substantive due process claim "premised on arbitrary and capricious government conduct...is subject to...the

final decision prong of the <u>Williamson</u> ripeness test." <u>Southview Assocs., Ltd. v. Bongartz</u>, 980 F.2d 84, 97 (2d Cir.1992); <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172, 186 (1985). In <u>Williamson County</u>, the Supreme Court held that the plaintiff's claim that zoning laws had effected a taking of its property was not ripe because the plaintiff had not sought variances which would have allowed it to develop the property. The Second Circuit has articulated the reason for this requirement: "Unless a court has a final decision before it, it cannot determine whether a claimant was deprived of property and whether the government conduct was arbitrary or capricious." <u>See</u> <u>Southview Assoc.</u>, 980 F.2d at 97.

Here, plaintiff alleges that the building inspector initially denied his request for a building permit. In addition, plaintiff claims that he appealed the denial to the ZBA and the ZBA overturned the decision of the building inspector. Thereafter, the Amended Complaint alleges that the building inspector required certain additional information from plaintiff as part of the application for a building permit. Plaintiff does not allege that he ever provided such information. Further, plaintiff does not allege that he even pursued an appeal of the building inspector's decision or requested a variance to the ZBA. Plaintiff has also not claimed that he has received a final determination of his application for a permit. Moreover, the plaintiff has not alleged that he ever applied for a permit under the Town of Riga's Wind

Energy Facilities law, which plaintiff acknowledges was passed on February 13, 2007 and amended in September 2008. <u>See</u> Am. Comp., Statement of Claim ¶¶ 66-68.[9] Accordingly, plaintiff's substantive due process claim is not ripe for judicial review. However, to complete the record, the Court will nevertheless consider the merits of plaintiff's substantive due process claim.

Because the court considers the property right issue as a threshold matter, a civil rights due process claim may be rejected without the necessity of exploring the second prong of the due process analysis. <u>See</u>, <u>e.g.</u>, <u>Crowley</u>, 76 F.3d at 52. Specifically, in cases where there is no "entitlement," and therefore no protected property interest, it will matter not how the Town's actions are characterized. <u>See</u> <u>DLC Mngt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 129-30 (2d Cir.1998) (party only has vested property interest if it has legitimate claim of entitlement to claimed right). The case may be dismissed at the outset based upon the lack of a constitutionally protected property interest. <u>See</u> <u>RRI Realty Corp. v. Inc. Vill. of Southampton</u>, 870 F.2d 911, 918 (2d Cir. 1989). With these principles in mind, the court turns to consider whether plaintiff's Amended Complaint alleges the deprivation of a Constitutionally protected right.

Here, as is typical in a due process case involving the use of one's land, plaintiff argues a right to obtain a building permit.

---

[9]The Town of Riga's Wind Energy Facilities law (Town of Riga Town Code § 95-76) can be found in the Town's website.

However, plaintiff does not have a claim to entitlement to the permit he seeks. "In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the...due process clause[,] a landowner must show a 'clear entitlement' to that benefit." See O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir.2007) (citing Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir.2006)); Natale v. Town of Ridgefield, 170 F.3d 258, 263-64 (2d Cir.1999). Whether a clear entitlement exists ordinarily is an issue of law. See Natale, 170 F.3d at 263. Uncertainty as to the meaning of the applicable law defeats a claim to a clear entitlement. See Clubside, 468 F.3d at 153. As the Second Circuit explained in Natale, "in order to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." See Natale, 170 F.3d at 263 n. 1.[10] In this case, defendants argue and the Court agrees that the Town Code of the Town of Riga provides that the building inspector had the discretion to determine whether an application conforms with the general sections as listed in Section 35-4 of the Town Code.

---

[10]In Natale, the Second Circuit denied Section 1983 relief to plaintiffs who had prevailed on a mandamus claim under state law because their state law claim required "a refined analysis of two state statutes and a state Supreme Court decision, thereby resolving an issue that had been 'a legitimate dispute.'" Id. at 264.

Moreover, even assuming that plaintiff has alleged a protectable property interest, he has failed to adequately claim that defendants arbitrarily or irrationally deprived him of that property interest. See Southview Assocs., 980 F.2d at 101; Harlen Assoc. v. Inc. Vill. of Mineola, 273 F.3d 494, 501 (2d Cir. 2001) (substantive due process standards violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority; "[a] zoning board's decision can be considered irrational only when the board acts with no legitimate reason for the decision.") (internal quotations omitted); id. at 504 (noting that New York law accords zoning boards "the power to grant and deny special use permits within [their] untrammeled, but of course not capricious discretion...with which courts may interfere only when it is clear that the Board has acted solely upon grounds which as a matter of law may not control") (citations and internal quotations omitted); see also Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir.1986) (noting that "federal courts should not become zoning boards of appeal to review non-constitutional land use determinations [because] [f]ederal judges lack the knowledge and sensitivity to local conditions necessary to a proper balancing of the complex factors that enter into local zoning decisions").

Here, plaintiff has failed to allege conduct by the defendants that is so outrageously arbitrary as to constitute a violation of substantive due process standards. Plaintiff's Amended Complaint

fails to make any allegations to support the second prong of a due process claim in that he merely alleges in conclusory terms that the Town of Riga's failure to issue him a building permit violated his due process rights. Plaintiff's allegations of a due process violation appear to be based on his claim that various provisions of the Town Code were misapplied to his specific application rather than allegations of actions that are arbitrary in a constitutional sense. The actions complained of by plaintiff relate to a municipality's legitimate interest in upholding zoning laws to protect public health and safety. Thus, defendants' motions to dismiss plaintiff's due process claims and Counts 7, 8, 9, 11, 14, 14 [second count 14 to the extent alleging Due Process], 17 and 22 are dismissed with prejudice.

### VIII.    Plaintiff's Conspiracy Claim

In order to survive a motion to dismiss a §1983 conspiracy claim (Count 22), plaintiff must allege (1) an agreement between two or more state actors, or "a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." See Ciambrello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir.2002) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999)). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." See id. at 325 (quoting Dwares v. City of

N.Y., 985 F.2d 94, 100 (2d Cir.1993)); Walker v. Jastremski, 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under §1983....") Moreover, it is well-settled that, although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, [ ] the pleadings must present facts tending to show agreement and concerted action." See McIntyre v. Longwood Cent. Sch. Dist., 2008 WL 850263, at * 11 (E.D.N.Y.2008) (internal quotation marks and citations omitted).[11] Further, in 2007, the Supreme Court held in Bell Atlantic v. Twombly that a plaintiff must go beyond mere "labels and conclusions" in stating the grounds on which he is entitled to relief, and emphasized that "a formulaic

---

[11]The Court briefly addresses the continued viability of the Ciambrello standard in this Circuit. In Toussie v. Powell, the Second Circuit declined to "consider whether [its] previous statements on the pleading requirements for [civil rights] conspiracy allegations remain valid in light of two subsequent Supreme Court decisions, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993), and Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)." 323 F.3d 178, 185 n. 3 (2d Cir.2003) (citing, inter alia, Polur v. Raffe, 912 F.2d 52, 56 (2d Cir.1990) ("It is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.")). In the two Supreme Court decisions referenced in Toussie, the Court "rejected judicially established pleading requirements on the principle that where the Federal Rules of Civil Procedure do not specify heightened pleading requirements, Rule 8(a)(2)'s liberal system of 'notice pleading' governs." See id. (internal citation omitted); see also Jessamy v. City of New Rochelle, 292 F.Supp.2d 498, 513 n. 18 (S.D.N.Y.2003) (declining to "resolve the apparent tension between the pleading standards set forth in Ciambriello/Pangburn and Swierkiewicz"). Nevertheless, following Toussie and the two Supreme Court opinions cited therein, courts in this Circuit have continued to evaluate the viability of conspiracy claims pursuant to the standard enunciated in Ciambrello--namely, that "complaints containing only conclusory, vague, or general allegations...are properly dismissed." 292 F.3d at 325; see, e.g., Walker, 430 F.3d at 564 n. 5 ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under §1983....") (citing Ciambrello); Burke v. APT Found., 509 F.Supp.2d 169, 173-74 (D.Conn.2007) (dismissing a civil rights conspiracy claims pursuant to the Ciambrello standard); Williams v. New York City Hous. Auth., 2007 WL 4215876, at *5 (S.D.N.Y.2007) (same); see also Olmeda v. Babbits, 2008 WL 282122, at *6 (S.D.N.Y.2008) ("Given [his] conclusory and unsupported allegations, [the plaintiff] has not met his burden of pleading a conspiracy").

recitation of the elements of a cause of action will not do." 127 S.Ct. at 1973-74.[12]

Therefore, pursuant to _Twombly_ and the persuasive weight of authority in this Circuit, this Court applies the _Ciambrello_ standard in evaluating the sufficiency of plaintiff's conspiracy claims under the Rule 12(b)(6) standard. Indeed, courts' continued application of the _Ciambrello_ standard notwithstanding Rule 8(a)'s "notice pleading requirement," _see Toussie_, 292 F.3d at 325, is in accord with the "critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted." _See Wynder v. McMahon_, 360 F.3d 73, 80 (2d Cir.2004) (vacating the district court's dismissal of a complaint pursuant to Rule 8(a), but noting that "a series of 12(b)(6) motions to dismiss would lie to permit each particular defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against him").

In this regard, and in light of the Supreme Court decisions referenced in _Toussie_ as well as more recent Supreme Court and Second Circuit authority, the Court notes that it does not construe

---

[12]The Court specifically noted that "Swierkiewicz did not change the law of pleading, but simply re-emphasized...that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements." Id. at 1973; see In re Terrorist Attacks on Sept. 11, 2001, 392 F.Supp.2d 539, 564 (S.D.N.Y.2005) ("While Swierkiewicz made clear that pleading a McDonnell Douglas prima facie case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it contained only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based.") (quoting Jackson v. BellSouth Telecomm'ns, 372 F.3d 1250, 1270-71 (11th Cir.2004)).

the decision in <u>Ciambrello</u> as imposing a "heightened pleading requirement[ ]" for civil rights conspiracy claims, <u>Toussie</u>, 323 F.3d at 185, nor a requirement that plaintiff must plead "specific facts" to support his claim, <u>see</u> <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 2008 WL 817111, at * 22 (2d Cir.2008) ("[B]oth Twombly and [Erickson v. Pardus, 127 S.Ct. 2197 (2007)] explicitly disavow that Rule 8(a) requires any plaintiff ... to plead 'specific facts.'").

With these principles in mind, the Court turns to defendants' motion to dismiss plaintiff's conspiracy claim. Plaintiff alleges that Planning Board Chairperson Becker convinced Building Inspector McElligot to deny plaintiff's building permits. <u>See</u> Am. Comp., Count 22 ¶¶207-209. The cited allegations, by themselves, fail to state a conspiracy claim. They do not offer sufficient factual details regarding an agreement among defendants to violate the civil rights of plaintiff, or anyone else. Rather, they constitute the type of "vague, conclusory, and general" allegations that, standing alone, are routinely found lacking under the Rule 12(b)(6) standard. <u>See</u> <u>Ciambrello</u>, 292 F.3d at 325; <u>Olmeda</u>, 2008 WL 282122, at *6. Accordingly, defendants' motion to dismiss plaintiff's conspiracy claim is granted and plaintiff's conspiracy claim in Count 22 is dismissed with prejudice.

## IX.  **Plaintiff's RICO Claim**

Plaintiff request's leave to amend his Complaint to add a RICO statement as outlined in Local Rule 5.1(h) or alternatively to "supplement the existing complaint with a RICO Case Statement." <u>See</u>

Pl. Motion, dated May 26, 2009). Defendants argue that because plaintiff has failed to submit a proposed Second Amended Complaint and a proposed RICO Case Statement, his motion to amend should be denied. Usually, a movant's failure to submit a proposed amended complaint constitutes sufficient grounds to deny a motion to amend. See <u>Murray v. New York</u>, 604 F.Supp.2d 581, 588 (W.D.N.Y.2009); <u>see also</u> <u>La Barbera v. Ferran Enter., Inc.</u>, 2009 WL 367611, at *3 (E.D.N.Y.2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought") (internal quotation marks omitted). However, in some situations plaintiff's failure to submit a proposed amended complaint is not fatal if the moving papers "adequately explain the basis for, and nature of, the proposed amendment." See <u>Murray</u>, 604 F.Supp.2d at 588.

The decision to grant or deny leave to amend a complaint remains within the court's discretion. See <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). In the first instance, plaintiff has failed to specify how he intends to amend the complaint or more importantly, what he intends to include in the proposed Second Amended Complaint or RICO Case Statement. Plaintiff merely indicates that Local Rule 5.1(h) requires the restatement of the amended complaint. Because plaintiff has failed to specify how he intends to amend his complaint or provide the contents of a RICO Case Statement,

plaintiff's motion to amend is denied on this basis. See Murray, 604 F.Supp.2d at 588.

Further, a district court may deny leave to amend where such amendment would be futile. See Hom Sui Ching v. U.S., 298 F.3d 174, 180 (2d Cir.2002) (citing Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 50 (2d Cir.1999). An amendment will be deemed futile, and the motion to amend denied, where the amendment would be subject to dismissal for failure to state a claim upon which relief may be granted. See Milanese and Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir.2003) ("leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss ....") Here, I conclude that it would be futile to allow plaintiff to amend his Amended Complaint with respect to the RICO claim.

"RICO is a broadly worded statute that 'has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" See Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 107 (2d Cir.2001) (quoting S.Rep. No. 91-617, at 76 (1969)). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." See Bell v. Hubbert, 2007 WL 60513, at *5 (S.D.N.Y.2007) (citations and internal quotation marks omitted). "To establish a RICO claim, a plaintiff must show: (1) a

violation of the RICO statute, 18 U.S.C. §1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." See <u>DeFalco v. Bernas</u>, 244 F.3d 286, 305 (2d Cir.2001) (citations and internal quotation marks omitted). Thus, to state a claim under the civil RICO statute, "a plaintiff has two pleading burdens." See <u>Moss v. Morgan Stanley, Inc.</u>, 719 F.2d 5, 17 (2d Cir.1983).

First, the complaint must allege that the defendant has violated "the substantive RICO statute...commonly known as 'criminal RICO.'" See <u>id.</u> In order to meet this initial burden, a plaintiff must plead "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." See <u>id.</u>

When bringing a RICO claim against multiple defendants, the plaintiff must allege that each defendant committed two or more predicate acts. See, <u>e.g.</u>, <u>DeFalco</u>, 244 F.3d at 306 (stating that "the requirements of Section 1962(c) must be established as to each individual defendant" and that "at least two predicate acts must be present to constitute a pattern"); <u>Citadel Mgmt. Inc. v. Telesis Trust, Inc.</u>, 123 F.Supp.2d 133, 155 (S.D.N.Y.2000) ("In the context of a RICO claim, each defendant must be alleged to have engaged in two or more predicate acts"). Plaintiff must show that "the

predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." See AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 WL 3710370, at * 9 (E.D.N.Y.2005) (internal citations omitted). "Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." See id. (quoting Davis Lee Pharmacy, Inc. v. Manhattan Cent. Capital Corp., 327 F.Supp.2d 159, 164 (E.D.N.Y.2004)) (internal quotations and citations omitted).

The terms enterprise, racketeering activity, and pattern as used in the RICO statute are terms of art. An "enterprise" is a legal entity or an association-in-fact. See 18 U.S.C. §1961(4). "Racketeering activity" includes any act indictable under the state and federal criminal statutes specifically listed in 18 U.S.C. §1961(1), including, relevant to this action, the mail fraud statute, 18 U.S.C. §1341, and the wire fraud statute, 18 U.S.C. §1343.[13] A "pattern" of racketeering activity involves at least two predicate acts meeting the definition of racketeering activity. See 18 U.S.C. § 1961(5).

Here, plaintiff's RICO claim fails as a matter of law because he does not adequately plead at least two predicate acts by each

---

[13]Plaintiff has alleged mail fraud and wire fraud in his Amended Complaint. While mail fraud and wire fraud, when sufficiently alleged, may constitute predicate acts when RICO's other requirements are met, plaintiff's allegations of mail fraud and wire fraud are insufficient to constitute allegations of predicate acts for purposes of RICO. In addition, the Court has dismissed plaintiff's claims under 18 U.S.C. §§ 1341 and 1343. See Point II.

defendant. Indeed, plaintiff broadly asserts a civil RICO cause of action against all of the defendants. Moreover, plaintiff fails to allege with any particularity how each or how any of the defendants are liable under the civil RICO statute. Plaintiff also fails to specifically allege regarding each or any of the defendants the predicate acts of racketeering activity that serve as a basis for their claimed liability. In addition, plaintiff does not plead mail and wire fraud with adequate particularity. Plaintiff's claims of mail fraud in Count 3 and wire fraud in Count 4 are based merely on defendant McElligot mailing and faxing a denial of a building permit to plaintiff in December 2005 which plaintiff claims was a "fraudulent denial." <u>See</u> Am. Comp., Counts 3-4, ¶¶91-98. The remaining allegation of mail fraud and wire fraud in Counts 15 and 16 are based on a separate defendant (Chapman) who allegedly "pass[ed] fraudulent documents" by mail and fax in December 2006. <u>See</u> Am. Comp., Counts 15-16, ¶¶173-178. Plaintiff does not specify the documents that constitute the alleged "fraudulent documents" that were passed by mail and fax. Even if the alleged "fraudulent documents" are meant to be the building permit denial referred to in paragraph 155, such a denial does not constitute mail or wire fraud for purposes of RICO. Accordingly, the allegations set forth in plaintiff's Amended Complaint demonstrate that the transmittal of the building permit did not constitute mail or wire fraud but merely a denial of a permit.

Further, plaintiff fails to allege the existence of a RICO enterprise. Plaintiff has not asserted any activities that affected interstate commerce. Plaintiff also has not adequately alleged the elements of a RICO conspiracy, in particular that plaintiff does not allege facts showing that each defendant entered into an agreement to commit two or more predicate acts. The Court concludes based on its discussion above that it would be futile to allow plaintiff to amend his Amended Complaint with respect to the RICO claim. Additional facts will not change this scenario and therefore any amendment would be futile. Thus, plaintiff's motion to amend is denied, defendants' motion to dismiss is granted and Count 24 is dismissed with prejudice.

**X.    Dismissal of Complaint as to the Town of Greece**

The only allegation against the Town of Greece is by virtue of the fact that it employed and supervised defendant Chapman. <u>See</u> Am. Comp., Count 14 [second count 14], ¶¶158-159). However, the Amended Complaint demonstrates that Chapman was acting as the building inspector for the Town of Riga and not the Town of Greece as it relates to the allegations in the Amended Complaint. Accordingly, the Amended Complaint is dismissed with prejudice as against the Town of Greece.

**XI.   Wind Committee Defendants**

Defendants Edgar Moore and David Plank appear to have been named based on their participation in a fact finding endeavor with the  Wind Committee. <u>See</u> Am. Comp., The Parties, ¶¶ 8-9. The sole

count in the Amended Complaint that makes claims against the Wind Committee or its members is Count 21, which involves 18 U.S.C. §241 (Conspiracy). As discussed in Point II above, §241 is a criminal statute and violations of the criminal code may not serve as the basis for a civil cause of action unless the statute includes an express or implied private right of action. <u>See Hill</u>, 191 Fed.Appx. at 14. Because §241 is a federal criminal statute that does not create a private right of action, the Court dismissed plaintiff's §241 claim in Count 21 with prejudice. Thus, the Amended Complaint is dismissed with prejudice as against Moore and Plank based on their positions on the Wind Committee of the Town of Riga.

## XII. <u>The ZBA and Its Individual Members</u>

Plaintiff names the ZBA and various individual members in the Amended Complaint. The allegations include delay by the ZBA in hearing plaintiff's appeal for the denial of his building permit applications. <u>See</u> Am. Comp., Counts 6, 6 [second count 6], 7, ¶¶106-129. Given the reasons mentioned in the above decision, plaintiff's claimed delay by the ZBA does not give rise to a cause of action against the ZBA or any of the named individual members. Therefore, the Amended Complaint is dismissed as against the ZBA and its individual members.

## XIII. <u>Members of the Town Board of the Town of Riga</u>

Legislators are entitled to absolute legislative immunity for claims brought under §1983. <u>See Bogan v. Scott-Harris</u>, 523 U.S. 44

(1998). Under the Supreme Court's functional test of absolute legislative immunity, whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question. See Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir.2003) (citing Bogan, 523 U.S. at 54) ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.") Specifically, legislative immunity shields an official from liability if the act in question was undertaken "in the sphere of legitimate legislative activity." See Bogan, 523 U.S. at 54 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)).[14] Legislative immunity bars suits for damages, injunctions and declaratory relief against legislators. See State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 81-88 (2d Cir.2007). Accordingly, legislators, whether in the local, state and regional levels, are entitled to absolute immunity for their legislative activities. See Bogan, 523 U.S. at 49; Harhay, 323 F.3d at 210.

Defendant argues that plaintiff's claims against members of the Town Board are based on legislative activities that entitle the Town Board members to absolute immunity. The Court agrees. While it is not entirely clear, it appears plaintiff may intend to allege causes of action against members of the Town Board based on passage

---

[14]The Supreme Court held that the introduction of a proposed budget and the subsequent signing into law of an ordinance adopting the budget are legislative functions for which executive officials enjoy absolute immunity from § 1983 liability regardless of their motive or intent. See Bogan, 523 U.S. at 55.

of a moratorium (Counts 6, 17 and 20) and amendment to the Town Code of the Town of Riga in connection to the wind turbines, in which case both actions enjoy legislative immunity. <u>See</u> Am. Comp., Count 23. Thus, the Amended Complaint is dismissed with prejudice as against the members of the Town Board of the Town of Riga.

## CONCLUSION

For the reasons set forth above, I grant the defendants' motion to dismiss and deny plaintiff's motion to amend.[15] The court finds the following:

(1) Counts 3, 4, 6 [second count 6], 7 (to the extent alleging a violation of 18 U.S.C. §242), 15, 16, 21 and 23 of plaintiff's Amended Complaint are dismissed with prejudice;

(2) Plaintiff's New York State Penal law claims including Penal Law §195 (Counts 5, 6 and 19), Penal law §190 (Counts 10, 12 and 14 [second count 14]), Penal Law §190.25 (Count 14 [second count 14]) and Penal Law §190.20 (Count 20) of the Amended Complaint are dismissed with prejudice;

---

[15]Although the plaintiff in this action appears <u>pro se</u>, the plaintiff is reminded that Rule 11 of the Federal Rules of Civil Procedure prohibits all parties, including <u>pro se</u> litigants, from raising claims that are not warranted by existing law, or constitute frivolous arguments or attempts to change existing law. Fed. R. Civ. P. 11(b). A party found to have violated Rule 11 may be sanctioned by the court, and such sanctions can include monetary fines, and Orders to pay the opposing party's legal costs. Fed. R. Civ. P. 11(c). In this case, the plaintiff has made claims that are legally and factually frivolous, and by doing so, has engaged in behavior that approaches sanctionable conduct under Rule 11. Had these claims been raised by an attorney, the court almost certainly would have been required under Rule 11(c)(3) to issue an Order to Show Cause why sanctions should not be imposed. While the Court at this time declines to issue such an Order, plaintiff is reminded that frivolous arguments with no basis in law will not be tolerated by the Court, regardless of whether or not the plaintiff is proceeding <u>pro se</u>.

(3) Defendants' motion to dismiss plaintiff's state tort law claims is granted;[16]

(4) Plaintiff's trespass claims (Counts 1, 13 and 18 of the Amended Complaint) are dismissed with prejudice;

(5) Plaintiff's fraud claims (Counts 2 and 14 [second count 14 to the extent alleging fraud] of the Amended Complaint) are dismissed without prejudice;

(6) Plaintiff's equal protection claims (Counts 7 and 23 [second count 23 to the extent alleging violations of Equal Protection] of the Amended Complaint) are dismissed without prejudice;

(7) Plaintiff's procedural and substantive due process claims (Counts 7, 8, 9, 11, 14, 14 [second count 14 to the extent alleging Due Process], 17 and 22 of the Amended Complaint) are dismissed with prejudice;

(8) Plaintiff's conspiracy claim in Count 22 of the Amended Complaint is dismissed with prejudice;

(9) Plaintiff's request to amend his RICO cause of action in Count 24 of his Amended Complaint is denied on the basis of futility;

(10) Plaintiff's RICO claim in Count 24 of the Amended Complaint is dismissed with prejudice;

(11) Plaintiff's Amended Complaint is dismissed with prejudice as against the Town of Greece;

---

[16]See Note 7 for causes of action that are dismissed with prejudice and without prejudice.

(12) Plaintiff's Amended Complaint is dismissed with prejudice as against Moore and Plank based on their positions on the Wind Committee of the Town of Riga;

(13) Plaintiff's Amended Complaint is dismissed without prejudice as against the ZBA and its individual members;

(14) Plaintiff's Amended Complaint is dismissed with prejudice as against the individual members of the Town Board of the Town of Riga.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca<br>
MICHAEL A. TELESCA<br>
United States District Judge

Dated:     Rochester, New York
              August 17, 2009